UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

MICHAEL PALMER,                    )
                                   )
            Plaintiff,             )        Case No. 1:06-cv-301
                                   )
v.                                 )        Honorable Wendell A. Miles
                                   )
JENNIFER GRANHOLM et al.,          )
                                   )
            Defendants.            )
_____  )

## OPINION

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983.

The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff shall pay the initial

partial filing fee when funds are available.  Under the Prison Litigation Reform Act, PUB. L. NO.

104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under

federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be

granted, or seeks monetary relief from a defendant immune from such relief.   28 U.S.C.

§§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).  The Court must read Plaintiff's *pro se* complaint

indulgently, *see Haines v. Keener*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as

true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33

(1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a

claim.

**Discussion**

I.      Factual allegations

Plaintiff Michael Palmer is currently incarcerated in the Parnell Correctional Facility. In Oakland County Circuit Court, Plaintiff was convicted for 1994 crimes of breaking and entering with intent to commit a felony, felonious assault, and two counts of malicious destruction of property over $100.00. Plaintiff's complaint, however, concerns the denial of his parole. He sues Jennifer Granholm, Governor of the State of Michigan; Patricia Caruso, Director of the Michigan Department of Corrections (MDOC), John Rubitschun, Chair of the Michigan Parole Board; and the following members of the Michigan Parole Board: James Atterberry, Miguel Barrios, Charles Braddock, Stephen DeBoer, Enid Livingston, James Quinlan, Marianne Samper, Barbara Samper, and Artina Hardman.

Plaintiff alleges that he completed substance abuse programs, vocational training, group therapy courses and assaultive offender therapy; enrolled in college; attended seminars; maintained positive work reports; and remained misconduct free for the past three years. Yet, Plaintiff received his seventh consecutive MDOC Parole Board Notice of Decision (Notice of Decision) denying his parole on July 6, 2005. In the Notice of Decision, the parole board provided the following reasons in support of its decision:

**Crime & Criminal Behavior**
    **The property crime:**
    Involved breaking and entering occupied dwelling
    Involved the presence of a weapon(s)
    Involved injury
    Involved person(s) being present in home/business
    Was associated with violence

**The prisoner has a criminal history:**
Includes criminal conviction(s) as juvenile

**Correctional Adjustment**
**The prisoner's prior post conviction corrections history includes:**
A history of probation failure

**Program Involvement**
**Through involvement in community programs, the prisoner has:**
Been denied community placement due to a special designation

**Personal History**
**The prisoner has a history of substance abuse which:**
Is of long standing duration

Ex. 3 to Pl.'s Compl.  Plaintiff's next parole consideration date is September 8, 2006.

Plaintiff raises five claims concerning his denial of parole.  First, Plaintiff argues that Defendants violated his procedural and substantive due process rights by acquiescing to an unwritten policy of deferring the parole board's authority regarding a prisoner's parole eligibility to the crime victims.  Plaintiff also alleges that his ex-wife, Lynne Buscemi, a victim of his 1994 crime, communicated false statements to the parole board under the Crime Victim's Rights Act, MICH. COMP. LAWS § 780.751 *et seq.*[1] so Plaintiff was denied parole.  Since the parole board keeps the victim's communications confidential, Plaintiff complains that he cannot defend himself against Ms. Buscemi's allegations.

Second, Plaintiff alleges that the parole board violated his rights under the Equal Protection Clause by:  (i) denying parole for those prisoners, including Plaintiff, whose victims oppose their parole to the parole board more often than for those prisoners (with worse criminal

---

[1]Under MICH. COMP. LAWS § 780.771(1), a victim may address or submit a written statement for consideration by a parole board member.

histories and institutional records) whose victims do not oppose their parole; and (ii) Plaintiff, a

Caucasian man, argues that African American prisoners are more likely to receive parole than

Caucasian prisoners to maintain the racial balance of the prison population, even though the African

American prisoners allegedly incur a greater number of major misconducts and assaultive

convictions, and are more likely to violate their parole.

Third, Plaintiff states that parole board members retaliated against him in violation

of his First Amendment right to access of the courts for filing a civil rights complaint on March 25,

2005 against his ex-wife, her current husband, and several Oakland County officials.  *See Palmer*

*v. Buscemi et al.,* No. 1:05-cv-10094 (E.D. Mich.).

Fourth, Plaintiff argues that Defendants' politically motivated parole practices altered

the parole standards in place at the time of Plaintiff's criminal conduct, in violation of the *Ex Post*

*Facto* and Due Process Clauses.   Plaintiff finally alleges that Defendants engaged in a conspiracy

in violation of state-law.

For relief, Plaintiff requests declaratory and injunctive relief, a new parole hearing,

and costs and fees.

II.    Section 1983

A challenge to the fact or duration of confinement should be brought as a petition for

habeas corpus and is not the proper subject of a civil rights action brought pursuant to § 1983.  *See*

*Preiser v. Rodriguez,* 411 U.S. 475, 484, 493 (1973) (the essence of habeas corpus is an attack by

a person in custody upon the legality of that custody and the traditional function of the writ is to

secure release from illegal custody).  The Supreme Court has held that a state prisoner cannot make

a cognizable claim under § 1983 for an alleged unconstitutional conviction or for "harm caused by

actions whose unlawfulness would render a conviction or sentence invalid" unless a prisoner shows that the conviction or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994); *see also Edwards v. Balisok*, 520 U.S. 641, 646-48 (1997).  However, in *Wilkinson v. Dotson*, 125 S. Ct. 1242, 1247 (2005), the Supreme Court clarified that §1983 remains available to state prisoners for procedural challenges where success in the action would not necessarily spell immediate or speedier release for the prisoner.  Plaintiff specifically declares that he is not challenging the duration of his sentence, but instead he is challenging the procedures used by Defendants in determining parole. Pl.'s Compl. at 2.  Plaintiff does not directly seek release from prison; rather, he requests a new parole hearing and declaratory and injunctive relief preventing Defendants from violating his federal rights in future parole proceedings.  As a consequence, under *Wilkinson*, success in this action would not necessarily demonstrate the invalidity of Plaintiff's continued confinement, so his action does not appear to be *Heck*-barred.  Assuming that Plaintiff's action is cognizable under § 1983, it fails to state a claim as set forth herein.

III.    Failure to state a claim[2]

A complaint fails to state a claim upon which relief can be granted when it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. *Jones v. City of Carlisle*, 3 F.3d 945, 947 (6th Cir. 1993). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

A.    Defendants Granholm and Caruso

Plaintiff sues Michigan Governor Granholm, and MDOC Director Caruso, in their individual and official capacities. A plaintiff bringing an action pursuant to § 1983 cannot premise liability upon a theory of respondeat superior or vicarious liability. *Street*, 102 F.3d at 818 (quoting *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658 (1978)). Plaintiff must establish that Defendants Granholm and Caruso were personally involved, or that they otherwise encouraged or condoned the

---

[2]Although a prisoner may not grieve a decision by the parole board to grant or deny parole, a prisoner may grieve a failure of the parole board to follow the appropriate parole process. *See* MICH. DEP'T OF CORR., Policy Directive 03.02.130, ¶ F(2) (effective Dec. 19, 2003) (decisions by the parole board to grant, deny, rescind, amend or revoke parole are non-grievable issues), Policy Directive 06.05.100, ¶ H (effective July 1, 2000) (prisoners can challenge the calculation of the guidelines score, including accuracy of information used to calculate the score), Policy Directive 06.05.106, ¶ U (effective Feb. 10, 1986) (prisoners may grieve the failure to follow the parole process). The Court, however, need not first require exhaustion of available administrative remedies when the claim may be dismissed because it is, "on its face, frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief." 42 U.S.C. § 1997e(c)(2); *Brown v. Toombs*, 139 F.3d 1102, 1103 (6th Cir. 1998). Because Plaintiff's complaint fails to state a claim upon which relief can be granted, the Court will dismiss his action without first requiring Plaintiff to exhaust any available administrative remedies.

action of the offending employees. *Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing

*Rizzo v. Goode*, 423 U.S. 362, 375-76 (1976) and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.

1984)). There must be more than merely a right to control employees, as Plaintiff must show that

Defendants Granholm and Caruso at least implicitly authorized, approved, or knowingly acquiesced

in the unconstitutional conduct of the offending employees. *Walton v. City of Southfield*, 995 F.2d

1331, 1340 (6th Cir. 1993); *Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Plaintiff fails to allege any facts that show Defendants Granholm and Caruso encouraged or

condoned the conduct of the parole board members, or that Defendants Granholm and Caruso

authorized, approved or knowingly acquiesced in their conduct.  Because Plaintiff's § 1983 action

against Defendants Granholm and Caruso is premised on nothing more than respondeat superior

liability, his action fails to state a claim against them. *See Copeland*, 57 F.3d at 481.

            B.      Due Process Clause

                    1.      **Procedural Due Process**

        Plaintiff argues that the parole board's unwritten policy of deferring its decision-

making to the crime victim and the parole board's consideration of false "confidential" victim

statements under the Crime Victim's Rights Act violate his procedural due process rights.  Plaintiff

fails to raise a claim of constitutional magnitude.  Plaintiff has no liberty interest in being released

on parole.   There is no constitutional or inherent right to be conditionally released before the

expiration of a prison sentence. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S.

1, 7 (1979).  Although a state may establish a parole system, it has no duty to do so, and thus, the

presence of a parole system by itself does not give rise to a constitutionally-protected liberty interest

in parole release. *Id.*; *Bd. of Pardons v. Allen*, 482 U.S. 369, 373 (1987).  Rather, a liberty interest

is present only if state law entitles an inmate to release on parole. *Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233, 235 (6th Cir. 1991).

In *Sweeton v. Brown*, 27 F.3d 1162, 1164-65 (6th Cir. 1994) (en banc), the Sixth Circuit, noting "the broad powers of the Michigan procedural authorities to deny parole," has held that the Michigan system does not create a liberty interest in parole. Subsequent to its 1994 decision, the Sixth Circuit has recognized the continuing validity of *Sweeton* and has continued to find that Michigan's parole scheme creates no liberty interest in being released on parole. *See Ward v. Stegall*, No. 03-1804, 2004 WL 614581, at *1 (6th Cir. Mar. 24, 2004); *Martin v. Ohio Adult Parole Auth.*, No. 03-3642, 2003 WL 22976604, at *1 (6th Cir. Dec. 8, 2003); *Bullock v. McGinnis*, No. 00-1591, 2001 WL 180978, at *2 (6th Cir. Feb. 14, 2001); *Turnboe v. Stegall*, No. 00-1182, 2000 WL 1679478, at *1 (6th Cir. Nov. 1, 2000); *Hawkins v. Abramajtys*, No. 99-1995, 2000 WL 1434695, at *2 (6th Cir. Sept. 19, 2000); *Irvin v. Mich. Parole Bd.*, No. 99-1817, 2000 WL 800029, at *2 (6th Cir. June 14, 2000); *Clifton v. Gach*, No. 98-2239, 1999 WL 1253069, at *1 (6th Cir. Dec. 17, 1999). Also, in unpublished decisions, the Sixth Circuit has held that particular parts of Michigan's statutory parole scheme do not create a liberty interest in parole. *See Fifer v. Mich. Dep't of Corr.*, No. 96-2322, 1997 WL 681518, at *1 (6th Cir. Oct. 30, 1997); *Moran v. McGinnis*, No. 95-1330, 1996 WL 304344, at *2 (6th Cir. June 5, 1996); *Leaphart v. Gach*, No. 95-1639, 1995 WL 734480, at *2 (6th Cir. Dec. 11, 1995); *Vertin v. Gabry*, No. 94-2267, 1995 WL 613692, at *1 (6th Cir. Oct. 18, 1995); *Neff v. Johnson*, No. 92-1818, 1993 WL 11880, at *1 (6th Cir. Jan. 21, 1993); *Janiskee v. Mich. Dep't of Corr.*, No. 91-1103, 1991 WL 76181, at *1 (6th Cir. May 9, 1991); *Haynes v. Hudson*, No. 89-2006, 1990 WL 41025, at *1 (6th Cir. Apr. 10, 1990). Finally, the Michigan Supreme Court has recognized that there is no liberty interest in parole under the Michigan

system. *Glover v. Mich. Parole Bd.*, 596 N.W.2d 598, 603-04 (Mich. 1999).  Accordingly, Plaintiff has no liberty interest at stake.  Because Plaintiff has no liberty interest at stake, he fails to state a claim for a violation of his procedural due process rights.  *See Sweeton*, 27 F.3d at 1164-65.

Plaintiff also complains that his victim's statements to the parole board contain false information.  Assuming that the parole board did rely on false information, Plaintiff's claim does not present any constitutional violation.  *See Pukyrys v. Olson*, No. 95-1778, 1996 WL 636140, at *1 (6th Cir. Oct. 30, 1996) (no constitutional violation by having false information placed in a prison file); *Carson v. Little*, No. 88-1505, 1989 WL 40171, at *1 (6th Cir. Apr. 18, 1989) (inaccurate information in an inmate's file does not amount to a constitutional violation).  Because Plaintiff has no liberty interest in being paroled, Plaintiff cannot show that the false information was relied upon to a constitutionally-significant degree.  *See Maiden v. Johnson*, No. 98-1479, 1999 WL 507207, at *1 (6th Cir. June 10, 1999); *Draughn v. Green*, No. 97-1263, 1999 WL 164915, at *2 (6th Cir. Mar. 12, 1999); *Perotti v. Marshall*, No. 85-3776, 1986 WL 16695, at *1 (6th Cir. Mar. 14, 1986).  Therefore, Plaintiff fails to state a claim for a violation of his procedural due process rights.

### 2.     Substantive Due Process

Plaintiff also argues that the parole board's unwritten policy of deferring its decision-making to the crime victim and the parole board's consideration of false "confidential" victim statements violate his substantive due process rights.  To the extent that Plaintiff argues a violation of state law, such a claim is not cognizable in a federal habeas corpus action.  A federal court may not issue a writ of habeas corpus "on the basis of a perceived error of state law."  *Pulley v. Harris*, 465 U.S. 37, 41(1984); *Smith v. Sowders*, 848 F.2d 735, 738 (6th Cir. 1988).

To the extent that Plaintiff presents a federal constitutional claim, his claim is without merit. Substantive due process protects inmates from arbitrary denials of parole based on impermissible criteria such as race, religion, or political beliefs, or frivolous factors, such as eye color, even where a prisoner may not have a protected liberty interest. *See Block v. Potter*, 631 F.2d 233, 236 n.2 (3d Cir. 1980); *see also Mayrides v. Chaudhry*, No. 01-3369, 2002 WL 1359366, at *2 (6th Cir. June 20, 2002) (considering substantive due process claim in context of parole). In order to demonstrate constitutionally arbitrary conduct prohibited by substantive due process, Plaintiff must show that the Michigan Parole Board's conduct shocks the conscience and constitutes an "egregious abuse of governmental power." *Hampton v. Hobbs*, 106 F.3d 1281, 1288 (6th Cir. 1997); *Rimmer-Bey v. Brown*, 62 F.3d 789, 791 n.4 (6th Cir. 1995). Clearly, in this case, it cannot be said that the actions of the Michigan Parole Board in denying Plaintiff's release on parole seven times either shock the conscience or constitute an "egregious abuse of governmental power." *Id.* Plaintiff's sentence was imposed for breaking and entering, felonious assault and two counts malicious destruction of property over $100.00. In support of its decision, the parole board noted that Plaintiff's crime involved injury to the victim(s) and the presence of a weapon, and he has a history of probation failure and substance abuse. *See* Ex. 3 to Pl.'s Compl. The parole board cannot reasonably be considered to have committed an egregious abuse of governmental power in concluding that Plaintiff continues to represent a safety risk to society if released. Consequently, Plaintiff has failed to assert a constitutional claim cognizable in a federal habeas proceeding.

C.    Equal Protection Clause

Plaintiff argues that Defendants violated his Fourteenth Amendment right to equal

protection of the laws because:  (1) prisoners whose victims oppose parole are denied parole more

often than those prisoners whose victims do not oppose parole, and (2) African American prisoners

are more likely to receive parole than Caucasian prisoners to maintain the racial balance of the prison

population.  The Equal Protection Clause of the Fourteenth Amendment provides that a state may

not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially

a direction that all persons similarly situated should be treated alike.  U.S. CONST., amend XIV; *City

of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439 (1985).  In order to state an equal protection

claim, "a § 1983 plaintiff must allege that a state actor intentionally discriminated against the

plaintiff because of his membership in a protected class."  *Carnes v. Engler,* 76 F. App'x 79, 81 (6th

Cir. Sept. 19, 2003) (citing *Henry v. Metro. Sewer Dist.*, 922 F.2d 332, 341 (6th Cir. 1990)).

Plaintiff first alleges that prisoners whose victims oppose parole are denied parole

more often than those prisoners whose victims do not oppose parole.  Prisoners are not considered

members of a protected class for equal protection purposes.  *Jackson v. Jamrog,* 411 F.3d 615, 619

(6th Cir. 2005); *see also Carnes,* 76 F. App'x at 81.  Moreover, there is no fundamental right to

parole under the federal constitution.  *Bd. of Pardons,* 482 U.S. at 373.  Plaintiff failed to provide

any specific factual allegations that directly support his conclusion or give a reasonable inference that

he was arbitrarily denied parole.  *See Lillard v. Shelby County Bd. of Educ.,* 76 F.3d 716, 726 (6th

Cir. 1996).  Although Plaintiff provided the Court with a list of prisoners' names who have been

released on parole, *see* Ex. 4 to Pl.'s Compl., he failed to indicate if any of the victims of those

prisoners did not oppose their parole.  Victims have an absolute right to submit a statement regarding

an offender's parole under the Crime Victims Right's Act.  *See* MICH. COMP. LAWS § 780.771(1).

Further, the parole board has no way to control whether victims do or do not oppose the offender's

parole.  It has long been established that an equal protection claim, which is not supported by factual

allegations, may be dismissed as being only conclusory.  *Lillard,* 76 F.3d at 726  (citing *Chapman*

*v. City of Detroit,* 808 F.2d 459, 465 (6th Cir. 1986)).  Therefore, Plaintiff's claim fails to state an

equal protection claim.

Plaintiff's allegations also fall far short of demonstrating that Defendants intentionally

discriminated against him based on his race.  The Equal Protection Clause protects inmates from

invidious discrimination based on race.  *See Hunter v. Underwood,* 471 U.S. 222, 227-28 (1985).

In his complaint, Plaintiff alleges that:

> the parole rates of black versus white offenders in any given year correlate pert [sic]
> near exactly with the balance of black versus white offenders in the prison population
> in that same year; i.e., roughly 57 percent black offenders versus roughly 40 percent
> white offenders, though more black than white offenders are incarcerated each year.

Pl's Compl. at 10.  Plaintiff, however, failed to provide the Court with the source of his calculations.

Plaintiff's list of prisoners also failed to identify similarly situated African American prisoners who

have been released on parole.  *See* Ex. 4 to Pl.'s Compl.  Conclusory allegations of unconstitutional

conduct without specific factual allegations fail to state a claim under § 1983.  *See Lillard*, 76 F.3d

at 726; *Chapman*, 808 F.2d at 465; *Smith v. Rose*, 760 F.2d 102, 106 (6th Cir.1985); *Turnboe v.*

*Stegall*, No. 00-1182, 2000 WL 1679478, at *2 (6th Cir. Nov. 1, 2000). Therefore, Plaintiff fails to

state an equal protection claim.

D.      First Amendment

Plaintiff contends that Defendants denied him parole in retaliation for exercising his constitutional right of access to the courts.  Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution.  *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).  In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, in least in part, by the protected conduct.  *Id.*  Moreover, Plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct.  *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The filing of a civil rights case is constitutionally protected conduct.  A prisoner cannot be retaliated against for engaging in protected conduct.  *Bell v. Johnson*, 308 F.3d 594, 607 (6th Cir. Oct. 17, 2002).  Plaintiff alleges that Defendants retaliated against him for filing a 2005 civil rights complaint against his ex-wife, her current husband, and Oakland County officials in *Palmer,* No. 1:05-cv-10094 (E.D. Mich.).  Plaintiff, however, has failed to establish a causal connection between the denial of his parole and his protected activity.  *See Bell v. Ohio Adult Parole Auth.*, 23 F. App'x 478, 479 (6th Cir. 2001).  Defendants have no interest in Plaintiff's suit against his ex-wife, her husband and the Oakland County officials.  Further, nothing in Plaintiff's Notice of Decision states that the parole board denied his parole based on his pursuit of federal court remedies.  Rather, the Notice of Decision indicates that the parole board denied Plaintiff's parole, in part, based

on the seriousness of his crime, past criminal history and continued substance abuse.  *See* Ex. 3 to

Pl.'s Compl.  Thus, Plaintiff fails to establish a retaliation claim under the First Amendment.

> E.      *Ex Post Facto* Clause

Plaintiff argues that Defendants' politically motivated parole practices effectively

altered the parole standards in place at the time of Plaintiff's criminal conduct[3], in 1994, in violation

of the *Ex Post Facto* Clause.  Plaintiff relies on the results of a 1997 status report by Kenneth

McGinnis, a former MDOC Director, titled the Michigan Department of Corrections, *Five Years*

*After: An Analysis of the Michigan Parole Board since 1992* (Sept. 1997), whereas Defendants

allegedly indicated that the sentences of assaultive offenders and sex offenders would be effectively

increased because they would not be granted parole.  Plaintiff further states that a 1992 change in

the parole board from a "civil service" entity to a ten member board under the direct control of

Michigan's executive department has created a board that is no longer neutral and unbiased.

Under Michigan law enacted in 1992, the MDOC Director appoints a ten member

parole board.  MICH. COMP. LAWS § 791.231a(1).  The members receive an annual salary set by the

state legislature, but are no longer within the state's civil service provisions.  MICH. COMP. LAWS

§ 791.231a(3).  The Director may remove parole board members for incompetency, dereliction of

duty, malfeasance, misfeasance or nonfeasance in office.  MICH. COMP. LAWS § 791.231a(2).

Plaintiff argues that the MDOC Director has appointed parole board members who are pro-law

enforcement and prosecution and, therefore, less inclined than their predecessors to grant parole to

---

[3]The pertinent comparison for the *Ex Post Facto* Clause is between the relevant law at the time an offense was committed and the retroactively-applied version of the law.  *Shabazz v. Gabry,* 123 F.3d 909, 912 (6th Cir. 1997).

prisoners; and further, without civil service protection, members are subject to undue political influence.

Neutrality on the part of a parole board does not require civil service protection, or employment by a different agency, a law degree, or election or appointment as a judicial officer. *Morrissey v. Brewer,* 408 U.S. 471, 486 (1972); *see also Crowley v. Renico*, 81 F. App'x 36, 36-37 (6th Cir. 2003) (finding a claim that the Michigan Parole Board does not constitute a neutral and detached hearing body, based upon essentially the same arguments presented in the present case, to be without merit). Even civil service employees may be fired for reasons such as unsatisfactory service, failing to carry out their duties and obligations, or conduct unbecoming a state employee. *Young v. Trombley*, No. 00-cv-10488-BC, 2002 WL 1461755, *2 (E.D. Mich. July 5, 2002). "[T]he fact that Parole Board members no longer are civil service employees does not give the Director greater discretion in firing them and does not make them more amenable to political influence." *Id.* "The bias alleged by the [Plaintiff] is the 'general tendency of an administrative agency to serve the executive under which it derives its authority,'" and the "'general bias in favor of the alleged state interest or policy'" does not render the agency unable to make an objective analysis. *Id.*, quoting *Hammond v. Baldwin*, 866 F. 2d 172, 176-77 (6th Cir. 1989). Thus, although current parole board members are guided by an underlying philosophy that is different than the philosophy of former board members, this does not constitute the application of a newly enacted law or formal policy in a manner that would violate the *Ex Post Facto* Clause. *See Maile v. Lafler,* No. 04-CV-74806-DT*,* 2006 WL 1374045, at *1 (E.D. Mich. May 17, 2006) (neither the 1992 change in the composition of the Michigan Parole Board or its policy of granting early release less frequently to inmates serving parolable life sentences violate the *Ex Post Facto* Clause); *see also Shabazz,* 123 F.3d at 914-15.

Further, the change in the parole board does not effect Plaintiff's sentence as he committed his offense *after* the 1992 amendments.

The *Ex Post Facto* Clause prohibits the enactment of any law that "retroactively alter[s] the definition of crimes or increase[s] the punishment for criminal acts." *Collins v. Youngblood*, 497 U.S. 37, 43 (1990). In *California Department of Corrections v. Morales*, 514 U.S. 499 (1995), the Supreme Court considered whether a post-sentencing change to parole procedures constituted the type of change in the law subject to analysis under the *Ex Post Facto* Clause. The Court declined to adopt an interpretation of the Clause that would forbid "any legislative change that has any conceivable risk of affecting a prisoner's punishment." *Id.* at 508. Instead, the Court established a test inquiring whether a change in the law "produce[d] a sufficient risk of increasing the measure of punishment attached to the covered crimes." *Id.* at 509. A sufficient risk of increased punishment involves more than "some ambiguous sort of disadvantage" to an inmate. *Id.* at 506 n.3.

Although a prisoner's release on parole is discretionary with the parole board in Michigan, *see* MICH. COMP. LAWS §§ 791.234(6)(d), (7) and (9), the Court in *Garner v. Jones*, 529 U.S. 244, 253 (2000), observed that the "presence of discretion does not displace the protections of the *Ex Post Facto* Clause," as the "danger that legislatures might disfavor certain persons after the fact is present even in the parole context." The Court further noted that, "[i]t is often the case that an agency's policies and practices will indicate the manner in which it is exercising its discretion." *Id.* at 256 (citing *INS v. Yueh-Shaio Yang*, 519 U.S. 26, 32 (1996) (observing that the reasonableness of discretionary agency action can be gauged by reference to the agency's policies and practices)). The Court found that in deciding whether an administrative rule pertaining to Georgia's parole

- 16 -

system violated the *Ex Post Facto* Clause, the lower court should have considered a policy statement

where it was a "formal, published statement as to how the Board intends to enforce the Rule." *Id.*

at 256-57.  However, the Court explained that in the *Ex Post Facto* Clause analysis, it was equally

significant that,

> to the extent there inheres in *ex post facto* doctrine some idea of actual or
> constructive notice to the criminal before commission of the offense of the penalty
> for the transgression, . . ., we can say with some assurance that where parole is
> concerned[,] discretion, by its very definition, is subject to changes in the manner in
> which it is informed and then exercised.  The idea of discretion is that it has the
> capacity, and the obligation, to change and adapt based on experience.  New insights
> into the accuracy of predictions about the offense and the risk of recidivism
> consequent upon the offender's release, along with a complex of other factors, will
> inform parole decisions.

*Id.* at 253 (internal citations omitted).

It is clear that the controlling inquiry is whether the retroactive application of a later

enacted law or policy will create a sufficient risk of increasing the measure of punishment attached

to a particular crime.  *See Id.* at 249-50; *Morales*, 514 U.S. at 508-09.  Here, unlike the plaintiff in

*Garner*, Plaintiff is not challenging a newly enacted law, written policy or written rule.  He is simply

challenging the underlying philosophy that allegedly guides the current parole members in making

decisions regarding the release of assaultive offenders and sex offenders.  The *Ex Post Facto* Clause

provides that  "[n]o State shall . . . pass any . . . ex post facto Law."  U.S. Const., Art. I, § 10, cl. 1.

The wording of the Clause "leaves no doubt that it is a prohibition upon *legislative* action." *Seling*

*v. Young*, 531 U.S. 250, 270 n.* (2001) (Scalia, J., concurring) (emphasis in original).  The parole

board's philosophy regarding how best to protect public safety is simply not a law within the

meaning of the *Ex Post Facto* Clause.  Accordingly, that the collective philosophy of the parole

board has evolved since Plaintiff was originally sentenced to a philosophy that may be adverse to

Plaintiff does not implicate the *Ex Post Facto* Clause.

        G.      State Law

Plaintiff alleges that Defendants conspired to "disregard the law, state and federal,

in lieu of their respective personal and/or political beliefs, . . . ." Pl.'s Compl. at 14. Section 1983

does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir.

1995); *Sweeton*, 27 F.3d at 1166. To the extent that Plaintiff's complaint presents allegations under

state law, this Court declines to exercise jurisdiction. The Sixth Circuit has stated that district courts

should generally decline to exercise supplemental jurisdiction over state law claims under these

circumstances. *See Landefeld v. Marion Gen. Hosp.*, *Inc.,* 994 F.2d 1178, 1182 (6th Cir. 1993);

*Hawley v. Burke*, No. 97-1853, 1998 WL 384557, at *1-2 (6th Cir. June 18, 1998). This claim will

be dismissed without prejudice.

**Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the

Court determines that Plaintiff's action fails to state a claim and will therefore be dismissed pursuant

to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith

within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611

(6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no

good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $455

appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is

barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g).  If he is

barred, he will be required to pay the $455 appellate filing fee in one lump sum.

This dismissal counts as a strike for purposes of 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.

Dated: July 5, 2006                                                    /s/ Wendell A. Miles
                                                                           Wendell A. Miles
                                                                           Senior U.S. District Judge